IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONNA C. MILLER,                          )
                                          )
                Plaintiff,                )
                                          )
        v.                                )     1:14CV948
                                          )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )
                                          )
                Defendant.                )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Donna C. Miller, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff has filed a motion for summary judgment (Docket Entry 8) and Defendant has filed a motion for judgment on the pleadings (Docket Entry 11). The Court has before it the certified administrative record. For reasons discussed below, it is recommended that the Commissioner's decision be affirmed, that Plaintiff's motion for summary judgment be denied, and that Defendant's motion for judgment on the pleadings be granted.

1

## PROCEDURAL HISTORY

Plaintiff applied for DIB on or about February 1, 2011, alleging a disability onset date of January 31, 2008. (Tr. 134-35.)[1] Her application was denied initially and upon reconsideration. (Tr. 87, 102-06.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 35-72.) Plaintiff, her attorney, a medical expert and a vocational expert ("VE") appeared at the hearing on March 12, 2013. (Tr. 35.) A decision was issued on July 22, 2013, upholding the denial of Plaintiff's application for DIB. (Tr. 21-34.) On December 9, 2009, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Defendant's final decision for purposes of judicial review. (Tr. 1-3.)

## II. STANDARD OF REVIEW

The Commissioner held that Plaintiff was not disabled within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), *superseded in nonrelevant part by* 20 C.F.R. § 404.1517(d)(2); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

---

[1] Transcript citations refer to the administrative record.

2

"[It] consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence or the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Perales*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).
[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[4] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

In rendering his disability determination, the ALJ made the following findings later adopted by the Defendant:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

. . . .

3. The claimant has the following severe impairments: major depressive disorder, chronic, moderate to severe; dissociative disorder with depersonalization and derealization phenomena; pseudoseizure; dependent

---

[4] "Residual functional capacity" ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

histrionic traits; borderline versus low average intellectual functioning; hypertension; and degenerative changes at C5-C6 (20 CFR 404.1520(c)).

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except for lift no more than 50 pounds occasionally, lift and carry 25 pounds frequently, and occasional climbing of ladders, ropes, and scaffolds. Mentally, she requires 1 or 2-step tasks in a low stress job with only occasional decision making required, only occasional changes in the work place setting, no production, rate or pace work, only occasional interaction with the public, occasional interaction with co-workers with no tandem tasks, and work is to be isolated with only occasional supervision.

(Tr. 23-26.)

In light of the above findings regarding Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. 32.) The ALJ also found that Plaintiff, who was 51 years old at the time of the decision, met the definition of "advanced age." *Id.* (citing 20 C.F.R. § 404.1563). Finally, the ALJ noted that transferability of job skills was not an issue in the case, and added that Plaintiff has a limited education and can communicate in English. (Tr. 33.) Based on these factors, Plaintiff's RFC, and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* (citing 20 C.F.R. §§ 404.1569 and

6

404.1569(a).) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. 34.)

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that she was not disabled for purposes of the Act. (Docket Entry 9). In conclusory fashion, Plaintiff raises the following five arguments: (1) the ALJ erred in rejecting the medical opinions of Plaintiff's primary physician; (2) the ALJ erred in evaluating Plaintiff's subjective complaints of fatigue, anxiety, extreme memory loss, and inability to concentrate; (3) the ALJ failed her burden of establishing that there was other work in the economy that Plaintiff can perform; (4) the ALJ erred in failing to request input from a psychiatrist as the ALJ observed was necessary; and (5) the ALJ's conclusion is not supported by substantial evidence. As explained below, the undersigned concludes that the ALJ properly evaluated the objective and subjective evidence, and her decision is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### A. Opinion Evidence

Plaintiff states, without further argument, that the ALJ provided "no explanation whatsoever for her rejection of the opinions and assessments of [Plaintiff's] primary treating physician Dr. Hassan at Uwharrie Medical Center and Dr. Sater at Cornerstone Medical Center." (Docket Entry 9 at 2.) If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also* 20 C.F.R. §

7

Case 1:14-cv-00948-LCB-JLW Document 15 Filed 02/03/16 Page 7 of 15

404.1527(d)(2) (providing that the treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *Craig*, 76 F.3d at 590. The Commissioner typically affords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). However, a treating physician's opinion is not due controlling weight when "it is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590. "Courts evaluate and weigh medical opinions pursuant to the following nonexclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); 20 C.F.R. § 404.1527(d). "An ALJ's decision not to afford controlling weight to a treating physician's opinion must be supported by substantial evidence in the record." *Dyrda v. Colvin*, 47 F. Supp. 3d 318, 324 (M.D.N.C. 2014) (citing *Winford v. Chater*, 917 F. Supp. 398, 401) (E.D.Va. 1996)).

Here, there is limited documentation of Dr. Sami Hassan's treatment of Plaintiff. (Tr. 326, 371-73.) These documents reflect treatment notes from 4 office visits from May 12, 2010 through December 2, 2011. (Tr. 326, 371-73.) The Court does not ascertain, nor has Plaintiff made aware, any explicit language in the notes which renders a "medical opinion." *See* 20 C.F.R. § 416.927 ("Medical opinions are statements from physicians and psychologists

8

or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms . . . what [the claimant's] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."). In reviewing those notes, the ALJ noted in her decision that Plaintiff received medication for depression. (Tr. 27.) At the request of Dr. Hassan, Plaintiff was referred to Dr. Richard Sater for a neurological consultation on or about June 20, 2012. (Tr. 375-77.) Dr. Sater performed an examination and concluded that Plaintiff had some neck and back tenderness, but good range of motion. (Tr. 377.) He concluded that Plaintiff was alert with fluent speech, that her extraocular muscles were intact, her limbs, muscle bulk, tone and strength were normal, deep tendon reflexes were normal, and plantar responses were flexor. (*Id.*) In summary, Dr. Sater indicated that Plaintiff deals with "fatigue, subjective cognitive decline, joint and muscle aches, and insomnia;" however, he "feel[s] the chance that [Plaintiff] may have multiple sclerosis is less than 10%." (*Id.*) He further stated that Plaintiff's "pain, combined with insomnia and subjective memory concerns are consistent with a diagnosis for fibromyalgia" and mild depression. (*Id.*) The ALJ referenced Dr. Sater's evaluation in her assessment of Plaintiff's RFC. (Tr. 29-30.) In considering actual medical source statements by non-treating physicians (which were given great weight), the ALJ repeatedly indicated that the evaluations from the non-treating physicians were consistent with medical evidence and notes from Plaintiff's treating physicians. (Tr. 31-32.) For example, Dr. Carlo Yuson, a consultative examiner, felt that Plaintiff did not have multiple sclerosis, but "more likely is suffering from an underlying depression with some somatization." (Tr. 340.) Although

9

Plaintiff received medication for depression, she had not sought mental health treatment. Thus, a consultative examination was done in June 2011, which Dr. Gregory A. Villarosa concluded that Plaintiff may have "some difficulty with work-related activities," she has gotten along with others in work settings in the past, has the ability to follow directions, has the ability to maintain focus with tasks at a somewhat slower pace, and that she may have difficulties with pressures of day-to-day work activities. (Tr. 354.) Another consultative examiner's opinion was given great weight by the ALJ, and likewise consistent with Plaintiff's treating physicians. (Tr. 31-32; 412-13.) Four state agency opinions were also given significant weight which were also supported by the medical evidence in the record. (Tr. 31-32; 73-86; 88-101.) The Court concludes the ALJ evaluated all of the medical opinions of the record, giving appropriate weight to each. Thus, Plaintiff's argument is without merit.

### B. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints. (Docket Entry 9 at 2.) The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must weigh the credibility of a claimant's personal statements in the disability determination process. The first step requires the ALJ to determine if there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. The second step requires an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).)

10

"The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09CV364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)). "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.*

A review of the record indicates that the ALJ did not error in her evaluation of Plaintiff's credibility. With regards to Step 1, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 27.) At step two, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[5] (*Id.*) The ALJ concluded that Plaintiff's medical impairments would likely produce some pain, "but not to the extent alleged." (Tr. 30.) For example, Plaintiff testified that she relied upon her husband to help her get out of bed and that she is constantly tired and weak so she is on the couch most of the day (Tr. 43-44), but she told Dr. Villarosa that, on a typical day, she cares for her dogs, makes the bed, watches television, and sometimes water the flowers. (Tr. 353.) She also cooks twice a week,

---

[5] The Court notes that the language used by the ALJ is different from the objectionable boilerplate language regarding credibility that is at issue in *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015).

11

Case 1:14-cv-00948-LCB-JLW   Document 15   Filed 02/03/16   Page 11 of 15

goes out to eat three times a month, and uses her pool a couple times a week. (*Id.*) Plaintiff also indicated that she had to "hold everything trying to get through the house," (Tr. 44), but during the psychiatric consultation, Plaintiff "exhibited normal gait, [with] "unusual movements." (Tr. 404.) As for Plaintiff's depression, she requested medication, but has not sought any mental health treatment. (Tr. 55, 372.) "Because [she] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). In making her credibility determinations, the ALJ in the present case assessed all evidence and noted specific inconsistencies with Plaintiff's complaints of disabling symptoms and limitations, and the medical evidence presented that warranted discrediting the Plaintiff's testimony. The ALJ's credibility determination is sufficient based upon the evidence of record. Thus, this argument is without merit.

### C. The ALJ's Step-Five Analysis

Plaintiff argues that the ALJ failed to meet her burden of establishing that there were other jobs in the national economy that Plaintiff could perform. (Docket Entry 9 at 2.) The Commissioner contends that the hypothetical question presented to the vocational expert at the hearing "accurately portrayed Plaintiff's limitations." (Docket Entry 12 at 13.) The undersigned agrees.

At step five, the Commissioner has the "burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform." *Walls v. Barnhart*,

12

296 F.3d 287, 290 (4th Cir. 2002) (citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir.2000)). Here, the ALJ relied upon the VE testimony to determine whether there are other jobs in the national economy which Plaintiff could perform. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ posed a hypothetical question to the VE as to whether an individual like Plaintiff of the same age, educational level, work experience, and RFC limitations could find employment in the national economy. (Tr. 68-69.) The VE testified that jobs such as a material handler, a kitchen helper, and a cleaner existed in the national economy which Plaintiff could perform. (Tr. 69.) The ALJ determined that the VE's testimony was consistent with the Dictionary of Occupational Titles and ultimately concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 33-34.) Having considered the evidence of the record, the Court concludes that substantial evidence supports the ALJ's conclusion at this step. Plaintiff's conclusory statement that the ALJ failed to meet her burden at step five of the sequential evaluation process is without merit.

**D. Psychiatrist Records**

Plaintiff also argues that the ALJ "erred in failing to request input from a Psychiatrist as the [ALJ] observed was necessary." (Docket Entry 9 at 2.) This argument also lacks merit. At the conclusion of the hearing, the ALJ stated that he would "get a psychiatrist to review [Plaintiff's] record and offer an opinion." (Tr. 71.) The ALJ left the record open and delayed his decision until there was "further input from a psychiatrist." (*Id.*) On April 17, 2013, Dr.

Richard L. Spencer conducted a consultative psychiatric evaluation and submitted an opinion. (Tr. 404-14.) The ALJ explicitly noted this in her decision. (Tr. 27-28.) Therefore, Plaintiff's argument lacks merit.

### E. Substantial Evidence

Lastly, to the extent Plaintiff argues that the ALJ's decision is not based upon substantial evidence, this argument fails. In her decision, the ALJ stated that she considered the entire medical evidence of record in reaching her conclusion as to Plaintiff's disability status. (Tr. 23.) The ALJ concluded that Plaintiff's RFC "which limits [Plaintiff] to medium work with mental limitations[,] more than adequately accounts for [her] impairments." (Tr. 32.) The ALJ's conclusion that Plaintiff could perform medium work subject to several physical and mental limitations is consistent with the medical evidence and is supported by evidence which "a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 F.3d at 653 (quoting *Craig*, 76 F.3d at 589). The ALJ's decision that Plaintiff could perform other jobs in the national economy is also supported by substantial evidence. Therefore, reversal is not warranted on this basis.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 8) be **DENIED**, that Defendant's

14

Motion for Judgment on the Pleadings (Docket Entry 11) be **GRANTED**, and that the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

February 3rd, 2016
Durham, North Carolina

15